Jennie Wuerz, Administratrix of Estate of Edmund
Wuerz, Deceased, and Louis Reuther, Appellees,
v. Southern Railway Company, Appellant.

Opinion filed March 2, 1943.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East
St. Louis, for appellant.

LINDAUER & LINDAUER, of Belleville, for appellees;
FRANK T. PLATTNER, of East St. Louis, of counsel.

MR. PRESIDING JUSTICE CULBERTSON delivered the
opinion of the court.

This is an appeal from two judgments of the circuit

court of St. Clair county, in favor of Jennie Wuerz, administratrix of the estate of Edmund Wuerz, deceased, in the sum of $5,000, and in favor of Louis Reuther, in the sum of $600, as against the Southern Railway Company, a corporation. The judgments were based on verdicts rendered in favor of the appellees (hereinafter called plaintiffs), respectively, by reason of the death of Edmund Wuerz and on the basis of damage sustained by plaintiff Louis Reuther through damage to a truck owned by him which was being driven by Edmund Wuerz, and which was involved in a collision between the train of appellant, Southern Railway Company, a corporation (hereinafter called defendant).

The accident which was the basis of the action of plaintiffs occurred at the crossing of a public highway known as the extension of 52nd street (one of the public streets of the city of Belleville) where it intersected the right of way of the defendant railway company, in St. Clair county, in the State of Illinois. The complaint which was filed in the cause, consists of four counts, the first of which, on behalf of plaintiff Jennie Wuerz, as administratrix of the estate of Edmund Wuerz, deceased, charged, that the deceased was in the exercise of due care and caution for his own safety and that defendant was guilty of negligence in failing to furnish proper signs, signals, or warnings, of the approaching trains, at the crossing, and that defendant failed to give motorists approaching the crossing, and particularly the deceased, a proper and sufficient warning of the approach of the locomotive and cars through the blowing of a whistle or ringing of a bell. The second count of the complaint was substantially the same as the first count, except that it charged wilfulness and wantonness instead of the charge of general negligence. Count three of the complaint was substantially the same as count one in charging negligence and claiming damages on behalf of plaintiff Louis Reuther, as the result of damage to

the truck; and count four of the complaint on behalf of the plaintiff Louis Reuther was similar to count two in charging the defendant with wilfulness and wantonness.

Fifty-second street in the city of Belleville, which runs in a northerly and southerly direction, is a paved surface to the city limits, but there is a distance of approximately 90 to 100 feet from the end of the pavement, up to the tracks of the defendant, which is unpaved. The tracks of the defendant at the point where the accident occurred are practically straight, both to the east and to the west, for a distance of more than a mile, and the tracks are elevated above 52nd street and the adjoining terrain, about three or four feet. At the time of the accident which caused his death, the deceased, Edmund Wuerz, who had been driving a truck for the plaintiff Louis Reuther for about 18 years, was in the process of driving a truck in the business of delivering ice. The ice route which the deceased operated on the day of the accident required him to cross the tracks of defendant at 52nd street to some customers who lived south of the tracks, in the county, and the evidence showed that the deceased was familiar with the neighborhood, and also with the crossing in question and that he had crossed it numerous times. There were no crossarms or crossbars, or gate, or signal, and no wigwag or crossings signs of any kind at either side of the tracks at the crossing in question, at which point the defendant railway company maintained three sets of tracks. There was some evidence to the effect that there was a dirt embankment to the north of the tracks from four to six feet high, and that there were dried weeds along the right of way and the top of the dirt embankment west of the crossing in question. The photographic exhibits submitted by both plaintiffs, and the defendant, indicate, however, that the weeds and the embankment could not have prevented the deceased from seeing an oncoming train.

At the time of the accident, on the 4th day of February, 1940, a WPA project was in operation near the intersection where the accident occurred, and a number of persons who were engaged in digging a ditch on the project testified at the trial that they did not hear any ringing of the bell or blowing of the whistle of the locomotive of the train involved in the accident in question. There was other similar evidence on beha'f of plaintiff. There was some evidence that as the deceased approached the tracks, he stopped his truck and looked in both directions before he started to drive across. As he crossed the first track he was struck by the locomotive of a train of the defendant railway company, which was then traveling in an easterly direction on that track. The accident caused the death of Edmund Wuerz, and completely demolished the truck in which he was riding.

The testimony on behalf of defendant, by members of the crew of defendant's train, was to the effect that an automatic bell on the engine was ringing as the train approached the crossing. The fireman testified that as they got within 100 feet of the crossing he saw the truck coming from the north, going about 15 miles per hour, and that the truck kept going, right up onto the track, where it was struck by the train.

During the trial, at the close of the plaintiffs' evidence, the defendant filed motions for directed verdicts as to each of the four counts of the complaint, and the court below sustained the motions as to counts two and four of the complaint, which were based upon wilful and wanton conduct. The court, however, overruled the motions for directed verdicts as to counts one and three, which charged defendant with negligence. (The court also directed that the jury find defendant not guilty on the charge of operating the train at a high and dangerous rate of speed.) On appeal to this court the defendant sets up a number of grounds for reversal, but in view of the conclusion to which

we have come it is only necessary to consider one phase of defendant's contentions, in which it is asserted that the court below should have sustained the motions for directed verdicts at the close of all of the evidence.

The evidence in the case, coupled with the photographic exhibits, showing the intersection at which the accident occurred, indicates that a person approaching the intersection of 52nd street with the railroad tracks, could see down the track in the direction from which the train approached in the instant case, for a distance of at least one mile from any distance within 60 feet of the track. The evidence also disclosed that the deceased was very familiar with the crossing and had crossed it many times, so that he was aware that there was a railroad crossing at the intersection. Under a somewhat similar set of facts as is before this court in the instant case, the Supreme Court in the case of *Greenwald v. Baltimore & Ohio R. Co.,* 332 Ill. 627, at page 631, says:

"The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence (*Graham v. Hagmann,* 270 Ill. 252; *Lake Shore and Michigan Southern Railroad Co. v. Hart,* 87 id. 529; *Chicago, Burlington and Quincy Railroad Co. v. Damerell,* 81 id. 450; *Toledo, Wabash and Western Railway Co. v. Jones,* 76 id. 311.) One who has an unobstructed view of an approaching train is not justified

in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked, but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. (*Schlauder v. Chicago and Southern Traction Co.*, 253 Ill. 154.) The question of due care on the part of a plaintiff is a question for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care, but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff the trial court is justified in instructing the jury to return a verdict for defendant. In this case it seems clear from the testimony of appellant's witnesses, taken in its most favorable light, that appellant's agents, had they continued to look toward the southeast after going upon the tracks would have seen the approaching train in ample time to have avoided the collision. Appellant's evidence most favorable to him is, that when standing on the first or south track, which the testimony shows is from 30 to 40 feet south of the third track, on which the collision occurred, one can see at least 200 feet in the direction from which the train was approaching. Neither of appellants testified that after going upon the first or south track they again looked toward the southeast until they were crossing the second track. It seems clear that had they done so the collision would have been avoided. They testified that they heard no sound of warning, such as the blowing of a whistle or ringing

of a bell. The duty resting upon one who crosses a railroad track is not only to listen but to look, and the fact that no bell was rung or whistle blown, if such was the fact, would not excuse him from using due care to look in the direction from which a train might be coming, and in this case had appellant's servants done so it seems clear that the collision would have been avoided.''

In the instant case the testimony submitted on behalf of plaintiffs, viewed in its most favorable light, demonstrates that decedent, had he looked in the direction in which the train was coming, would have seen the train in ample time to have avoided the collision. In view of the precedent established in the case of *Greenwald v. Baltimore & Ohio R. Co., supra,* and in similar cases, we are compelled to conclude that the evidence tending to show negligence on part of the defendant will not suffice, and the contributory negligence on part of the deceased, effectively bars plaintiffs, under the facts, from any recovery as against defendant (*Scruggs v. Baltimore & Ohio R. Co.,* 287 Ill. App. 310). The court below should, therefore, have allowed defendant's motions for directed verdicts as to counts one and three. The issue of the contributory negligence of the ceased, under the facts, and in view of the conclusions expressed by our Supreme Court in the *Greenwald* case, should not have been submitted to the jury.

We are, therefore, compelled to reverse the judgments entered in the circuit court of St. Clair county, and to enter judgments here in favor of the defendant, and as against plaintiffs and in bar of the actions of plaintiffs.

*Reversed, and judgments in bar in this court.*