(No. 91-CC-0193–<span style="background:black"> </span>

MELISSA D. BROWN, Claimant, *v.* SOUTHERN ILLINOIS UNIVERSITY, Respondent.

*Opinion filed October 16, 1991.*

*Opinion filed May 12, 1994.*

*Order on petition for rehearing filed August 8, 1994.*

MAUREEN NELSON SCHUETTE, for Claimant.

REED, ARMSTRONG, GORMAN, COFFEY, THOMSON, GILBERT & MUDGE (STEVEN C. MUDGE, of counsel), for Respondent.

## OPINION

SOMMER, C.J.

This cause coming to be heard on the motion of the Respondent to dismiss, due notice having been given, and this Court being fully advised in the premises, finds that

this claim arose from an automobile accident on January 25, 1989. On July 14, 1989, the Respondent filed suit for damages in the small claims court in Madison County. The Claimant filed a counter-claim, and on February 9, 1990, the judge in Madison County ruled that the counter-claim must be filed as a claim in the Court of Claims, as the circuit court had no jurisdiction to hear a claim against the State. A notice of injury was filed with this Court on April 24, 1990, and the claim was filed July 20, 1990. The Respondent has moved for dismissal on the grounds that the notice of injury was not filed within one year of the occurrence of the accident, as per section 22—1 of the Court of Claims Act. 705 ILCS 505/22—1.

This Court notes the unusual circumstance of this claim. The Respondent was the party who initiated action by filing suit in Madison County. The Respondent hardly can maintain that it had no notice of the accident and the circumstances surrounding it. However, in past cases this Court has rejected the argument that if some State employees had knowledge of the accident, which they often do, the statutory notice requirement was met even if no notice was filed. (*Thomas v. State* (1961), 24 Ill. Ct. Cl. 137; *Munch v. State* (1966), 25 Ill. Ct. Cl. 313; *Bodine v. State* (1983), 35 Ill. Ct. Cl. 777.) We, however, believe that there is an operative distinction between State employees knowing that an accident occurred and the filing of suit based upon an accident.

As the State filed the suit, it was informed of the circumstances of the action and had the opportunity to investigate and make measured and official decisions. It is no longer a matter of some isolated State employees knowing about the accident. Thus, the purpose of the notice requirement would have been fully fulfilled, but more importantly, it should not be then invoked to prevent the

other party from exercising its full range of responses to the suit filed by the State. Indeed, the supreme court has recognized that filing in another court may satisfy the notice requirement of the Court of Claims. (*Williams v. Medical Center Commission* (1975), 60 Ill. 2d 389.) Therefore, we find that the Claimant was not required to file the notice within one year as required by section 22—1 of the Court of Claims Act under the circumstances of this claim.

The Claimant has requested punitive damages, and the Respondent has made a motion to dismiss that part of the complaint that prays for punitive damages.

Section 8(d) of the Court of Claims Act confers upon this Court jurisdiction in certain tort claims, to wit:

"All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation ° ° °. ° ° °" 705 ILCS 505/8(d).

This Court traditionally has not awarded punitive damages, but the Claimant argues there is nothing in section 8(d), *supra,* or the Court of Claims Act to prevent this Court from awarding punitive damages.

Section 8(d), *supra,* uses the term, "cause of action." There are many definitions of a "cause of action," but it is usually understood to be a set of facts giving rise to a claim allowed and enforceable by a court. Punitive damages are not a cause of action but are a type of relief arising from some successful causes of action. (*McGrew v. Heinold Commodities, Inc.* (1986), 147 Ill. App. 3d 104.) Thus, section 8(d) of the Court of Claims Act does not specifically authorize, by its language, this Court to assess punitive damages, as it speaks in terms of causes of action, not types of relief.

The Claimant, in support of this Court's awarding punitive damages, would argue that article XIII section 4

of the Illinois Constitution abolishes sovereign immunity except as provided by the General Assembly. Thus, governmental units would be subject to causes of action and types of relief the same as corporations and individuals except when exempted by the General Assembly. Indeed, the General Assembly did act in regard to local government to prohibit punitive damages. (745 ILCS 10/2—202.) Therefore, the Claimant would argue that since the General Assembly did not act to prohibit the Court of Claims from awarding punitive damages, as it did in the case of local governments, the Court of Claims may award punitive damages.

Repeated cases state that punitive damages are not favored in the law. (For example see *Hammond v. North American Asbestos Corp.* (1983), 86 Ill. 2d 195.) In the same case, the supreme court directed that the courts should take action to see that punitive damages are not improperly or unwisely awarded.

The purpose of punitive damages is to punish and deter outrageous conduct. (*Winters v. Greely* (1989), 189 Ill. App. 3d 590, appeal denied 128 Ill. 2d 673.) Punitive damages are penal in nature, meant to punish the wrong-doer and not to compensate the injured. *Kelsay v. Motorola Inc.* (1978), 74 Ill. 2d 172. *Smith v. Hill* (1958), 12 Ill. 2d 588.

The fact that punitive damages have not been assessed against governmental units in Illinois is based on strong public policy grounds as well as sovereign immunity. Local governmental units in Illinois have been exempted by the General Assembly from punitive damages on the ground that it is unsound public policy to punish taxpayers for misconduct of employees over which they have no control. So strong is the public policy that recently a public railway corporation, METRA, not specifically named in

the Tort Immunity Act and not exempted from punitive damages in its enabling act has been held not to be subject to punitive damages on public policy grounds. *Smith v. Northeast Illinois Regulatory Comm. R.R. Corp.* (1991), 210 Ill. App. 3d 223, 569 N.E.2d 41.

In view of the fact that the Court of Claims Act does not specifically authorize the payment of punitive damages and that there is strong public policy against punitive damages, particularly when assessed against government, this Court cannot award such absent a specific authorization to do so by the General Assembly.

It is therefore ordered that the part of the motion to dismiss directed to the statutory notice is denied and the part of the motion to dismiss directed to punitive damages is granted and that the prayer for punitive damages in the amended complaint is stricken, and this claim shall be returned to the Commissioner for hearing.

## OPINION

SOMMER, C.J.

This claim for property damages and personal injuries is brought against Southern Illinois University, Edwardsville, as a result of a collision between the Claimant's vehicle and one of the university's cargo vans.

The above vehicles collided at approximately 1:00 p.m. on January 25, 1989, on New Poag Road at its intersection with Bluff Road. The Claimant had just completed a final exam at the university and was on her way home to Wood River, Illinois. It was raining. The collision took place approximately one-tenth of a mile past the point where the Claimant had turned onto New Poag Road. The Claimant was following the university's cargo van from the point she turned onto New Poag Road, and

both she and the van driver claim to have been traveling at a reduced speed of 35 miles per hour (51.33 feet per second) due to the bad weather.

As the Claimant was following the university's van, she observed the brake light on the right rear of the van came on, but she did not notice that any light on the left side of the vehicle went on. It is undisputed that the van's left taillights (both turn signal and brake lamps) were not working. The van was gradually slowing down to make a left turn onto Bluff Road; its driver was concerned about not making a rapid left turn because there were no shelves in the van to prevent packages inside from sliding around or falling over.

The Claimant testified that she was following within three car lengths of the van at the point that the right brake light had come on. Assuming that a "car length" is in the neighborhood of 15 to 20 feet, that meant that she was at *most* approximately 45 to 60 feet behind the van, a distance that could be closed in roughly one second at a speed of 35 mph.

Upon seeing the van's right rear brake light come on, the Claimant immediately braked, and her car began to slide out of control. The Claimant sensed that she was about to collide with the rear of the van and attempted to move into the left, oncoming lane of traffic. As the van was making its left turn onto Bluff Road, the driver looked in the rear-view mirror, saw the Claimant's car coming out from behind the van, shouted "Oh, hell she's passing," and jerked the steering wheel to the right in an attempt to avoid a collision with the Claimant's car. Nonetheless, the front passenger side of the Claimant's vehicle struck the driver's door of the van, causing an impact which knocked the van over toward the right shoulder of the road and threw the van's passenger out of his seat and onto the floor.

Following the collision, the Claimant told the van's passenger that she was sorry and explained to the van's driver that she had lost control of her car. A State trooper who responded to the accident testified that the Claimant's car had gone into a slide because the Claimant had locked the brakes.

The Claimant alleges, in essence, that this collision resulted from the van's inoperative left rear turn signal and brake light. The university contends that, notwithstanding the faulty light, it did not cause this accident and that the contributory fault of the Claimant is more than 50% of the proximate cause of the collision and damages, thereby barring the Claimant's recovery pursuant to section 2—1116 of the Code of Civil Procedure. 735 ILCS 5/2—1116.

In reading the Claimant's brief and listening to her argument, one could easily come to the conclusion that liability has been fully established against the university simply by virtue of the uncontroverted fact that the van's right rear turn signal was inoperable at the moment of this collision. After all, that was a clearly negligent act on the part of the university which violated express provisions of the Illinois Vehicle Code, section 12—208(b) and 11—804(a), (b) (625 ILCS 5/12—208(b) and 625 ILCS 5/11—804(a), (b)). But it is a fundamental principle of tort law that proof of negligence does not complete a claimant's case. There is the further and more crucial question of proximate cause.

It simply is not enough to show that the supposed tortfeasor was guilty of some fault; in order to recover, the Claimant must also establish that the negligence complained of was the proximate cause of the Claimant's injury and damages. This legal principle has long been specifically applied in automobile negligence cases where

a portion or portions of the Vehicle Code have admittedly been violated by an alleged tortfeasor. Time and again courts have stressed that negligence alone does not create liability:

"Such violations must in addition be shown to have proximately contributed to the injury before liability ° ° ° can be predicated thereon." *Hestand v. Clark* (1952), 345 Ill. App. 480, 485; 103 N.E.2d 652, 654 (4th Dist.)

Thus, the critical inquiry in this case is not whether the university was negligent, but whether its negligence was the proximate cause of this collision.

The state of the evidence is such that the inoperable turn signal on the university's van was not the proximate cause. With a gap of at most between 45 and 60 feet between the front of her car and the rear of the university's van, the Claimant had put herself in a position where she had allowed only one second of time to both react and completely respond to anything that the van might do, proper or otherwise. The Claimant did not lose control of her car because of the van's broken turn signal. She skidded out of control because she was following the van too closely and locked up the brakes when attempting a panic stop. Accordingly, we find that the Claimant's own negligence was the proximate cause of this collision.

Notwithstanding the Claimant's assertions to the contrary, the addition of a turn signal would not have changed anything; this accident still would have occurred due to the insufficient distance which the Claimant had left between her car and the university's van. Accordingly, her claim is barred by section 2—1116 of the Code of Civil Procedure, as the Claimant's contributory fault was more than 50% of the proximate cause of the accident.

It is therefore ordered that this claim is denied.

## ORDER

SOMMER, C.J.

This cause coming to be heard on the Claimant's petition for rehearing, due notice having been given, and both parties having filed briefs, and this Court being fully advised, finds that this Court by an opinion issued on May 12, 1994, found the Claimant to be more than 50% of the proximate cause of the accident complained of, and therefore denied the claim; and this Court having reviewed its opinion and having read the briefs filed by both parties in regard to the petition finds no good cause for reconsidering its basic finding as cited above.

It is therefore ordered that the Claimant's petition for rehearing is denied.